**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JERMAINE HARRIS,

        Defendant.

Nos. CR 99-0002-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

_____

**TABLE OF CONTENTS**

*I.* *BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.* *Charges, Plea, And Convictions* . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B.* *Post-Trial Motions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *C.* *Sentencing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *D.* *Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *E.* *The § 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*II.* *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *A.* *Preliminary Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    *B.* *Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . . . 14
    *C.* *Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . 18
        *1.* *Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . 19
        *2.* *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 21
        *3.* *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            *a.* *Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            *b.* *Deficient performance* . . . . . . . . . . . . . . . . . . . . . 23
    *D.* *Correction Of Clerical Error* . . . . . . . . . . . . . . . . . . . . . . . 26
    *E.* *Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . 28

*III.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

This matter comes before the court pursuant to defendant Jermaine Harris's June 1, 2004, *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 173). In his § 2255 motion, Harris asserts that his trial counsel was ineffective in advising him to plead guilty to two firearms charges without first securing a ruling that evidence of the firearms would be excluded at trial on three remaining drug charges if he were to plead guilty to the firearms charges. He contends that he was prejudiced by counsel's deficient conduct, because he would not have pleaded guilty to the firearms charges but for counsel's advice, and counsel's failure to obtain a ruling excluding evidence of the firearms permitted such evidence to be admitted at trial, depriving him of any benefit of his guilty pleas. The government denies that Harris is entitled to any relief on this claim on the basis of untimeliness and on the merits. This matter also comes before the court pursuant to Harris's April 30, 2007, *pro se* Motion To Resentence Defendant Pursuant To Eighth Circuit Court Of Appeals Order To Correct Statutory Maximum Sentence Imposed In Title 26 U.S.C. § 5871 (docket no. 177), as clarified on May 30, 2007 (docket no. 179). In this later motion, Harris contends that the Eighth Circuit Court of Appeals ordered a correction to the sentence on one of the gun charges, but that the correction has never been made. The government contends that this latter motion is a successive and untimely § 2255 motion.

# I. BACKGROUND

## A. Charges, Plea, And Convictions

Defendant Jermaine Harris was charged with firearm and drug-trafficking offenses in an Indictment filed January 20, 1999 (docket no. 1). More specifically, Harris was indicted for distribution of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); possession with intent to distribute cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); conspiracy to distribute and possess with intent to distribute a cocaine base (crack cocaine) mixture weighing fifty grams or more in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 846; possession of an unregistered short-barreled shotgun in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(2).

On the day of jury selection, September 17, 1999, on advice of counsel, Harris pleaded guilty to the firearm charges before then-Chief Judge Michael J. Melloy, now a Circuit Judge, leaving only the drug charges for trial before the undersigned on September 20, 1999. *See* docket no. 54. On September 22, 1999, the jury convicted Harris of the distribution and conspiracy charges and a lesser-included offense of possession. *See* docket no. 68.

## B. Post-Trial Motions

On September 28, 1999, through trial counsel, Harris filed a motion for judgment of acquittal or new trial (docket no. 73), then on December 29, 1999, through new counsel, Harris filed a motion in arrest of judgment or for new trial (docket no. 88), and on January 18, 2000, an addendum to the latter motion (docket no. 96). Harris attempted to amend his post-trial motions on July 24, 2000, (docket no. 121), but the court denied leave to file that amendment (docket no. 147). The parties filed numerous briefs

3

concerning Harris's post-trial motions. *See* docket nos. 88, 91, 100, 139, 141. The court held an evidentiary hearing on Harris's post-trial motions beginning on June 23, 2000, continuing on September 26, 2000, and concluding with oral arguments on September 5, 2001.

One of the grounds Harris raised in his post-trial motions is essentially the ineffective assistance of counsel claim now before the court on his § 2255 motion. Specifically, Harris argued that his trial counsel had been ineffective in advising him to plead guilty to the firearms charges in a failed attempt to keep evidence of the firearms away from the jury at the trial on the drug charges. Harris, who has a very low IQ, and his brother, Steven, who assisted in conferences between Harris and his counsel prior to and during trial, both testified at the evidentiary hearing, as did Harris's trial counsel.

Harris denied that the guns were his, denied that he wanted to plead guilty to the firearms charges, and denied that he gave his trial counsel the go-ahead to plead to those charges. *See* Transcript Of Hearing On Post-Trial Motions (docket no. 132), 49-50. He also testified that he did not understand the reason why he was pleading guilty to those charges and that his counsel never told him anything about why he should do so. *Id.* at 50.

Steven Harris, on the other hand, testified that Harris's trial counsel had explained that, by pleading guilty to the firearms charges, the guns would not be brought up in court, the court would not be able to put the guns and drugs together to make it seem like Harris was a violent drug dealer, and any sentence on the gun charges would run concurrently with any sentence on the drug charges, so that Harris would not have additional punishment. *Id.* at 76. Steven Harris also testified that trial counsel had been trying to get Harris to plead guilty to the firearms charges for a week or more before trial, and that Steven had first agreed to the guilty pleas, then convinced his brother to go along with the

4

pleas. *Id.* at 76-77. After guns were mentioned in the trial, Steven Harris said that Harris's trial counsel explained that the judge had denied her request to exclude evidence or mention of the guns. *Id.* at 77. On cross-examination, Steven Harris admitted that trial counsel had not guaranteed that the guns would not be mentioned at trial if Harris pleaded guilty to the firearms charges before trial, but "she made it seem that if we pleaded guilty, that would absolutely not be brought up in court, and she just highly recommended that we pleaded guilty to it." *Id.* at 79.

Harris's trial counsel testified about how the guilty plea to the firearms charges came about, as follows:

> [TRIAL COUNSEL]: Mr. Harris and I had discussed the matter a number of times between July and September when the trial took place. I had made a recommendation that he plead to at least one of the gun counts—I think at one point the Government had offered a plea to one count in return for dismissing the other, because at the time it appeared that there would not be much defense to the gun count at the trial and Mr. Harris indicated that he would duly consider that, and at times he had said he might be taking that plea. I think at one point it was even set for a plea hearing, and he called about an hour before the hearing and said he didn't want to do that. At another point, we discussed it, and it looked like he would think hard about it. He just wouldn't give me an answer. Finally, we're up to the time of choosing the jury, I believe on a Friday afternoon, and either as the jury panel is coming in or they had already named off the—the first set of jurors and they were coming back in the room, Mr. Harris and his brother and I had a discussion about whether to take the plea on the gun counts, and he did decide to do that at that time. After the jury was selected, then we went upstairs and put in a plea before Judge Melloy.

Transcript Of Hearing On Post-Trial Motions at 82-83.

5

Trial counsel also explained her assessment of the evidence supporting the firearms charges and the impact of such evidence, if the firearms charges were presented to the jury, and whether evidence of the guns would be admitted:

> [TRIAL COUNSEL]: Well, first of all, with respect to the felon in possession count, it's common to use a stipulation, and I think at that point we had discussed using a stipulation, so I explained to Mr. Harris that one element of the offense is proved right away. With respect to the sawed [off shotgun], I explained, "You have a gun. It's a certain size. It's a pretty easy case for them to prove—prove that," and whether or not there was possession, that was also a very easy case for the Government to prove because the Defendant admitted it. They walked into his room, and there it is hanging on the wall. It's not as if it was in the trunk of a car or found somewhere in the house. It was in a room. He admitted to knowledge of it, and, in fact, did so in the plea hearing, so it seemed to be a pretty easy case for the Government to prove, and I recommended that he plead to that to get it out from under the jury's consideration because it was a loser anyway.
>
> Q [BY THE PROSECUTOR]: What advice did you give him about the fact that the fire—that the Defendant had firearms, whether that was going to be an issue at trial or not?
>
> A: Whether that would be an issue if just the drug case went to trial?
>
> Q: Yes ma'am.
>
> A: Okay. I had told Mr. Harris that the—we had filed a motion in limine. I don't know at that point if it had been ruled upon. I—I was quite hopeful that the judge would give us a favorable ruling on that, but I indicated there's no guarantee. But in any case, even if the plea—even if there was a plea on the gun count and evidence of some sort of—of the gun came in, at least the gun would not necessarily have to be introduced as an exhibit. The jury would not be considering whether or not there was possession of a gun. They wouldn't have gun on their mind, I think is the way I put it. If the gun

6

counts were on the verdict form, they're going to be obsessed with the gun. And I said to him, "Guns, crack cocaine, and the fact that you're black is not a very good mix." And to the extent that we can remove the gun from the mix, I recommended that he take that plea.

Q: Had you had any discussions or gotten any concessions or predictions from the United States or the Court about limiting the effect of the guilty plea, taking out the issue of admissibility of the plea itself, for instance?

A: Yes, I believe I had had some assurance—I don't believe I did the research myself, but I had some assurance from you [the prosecutor] that the fact of the guilty plea itself on the gun case would not be coming up, and I believe either Judge Jarvey [the magistrate judge presiding over jury selection] or Judge Bennett had also indicated the fact of the guilty plea on the gun case was not going to come up in the drug case.

Transcript Of Hearing On Post-Trial Motions at 85-86. Trial counsel also testified that she had explained her reasoning concerning the guilty pleas to the firearms offenses by letter and in person to Harris and his brother. *Id.* at 86-87. She denied that she had given any guarantee that the firearms would not be brought up and, instead, had tried to remind Harris that it was always going to be up to the judge, but that she had been "hopeful" about a favorable ruling on her motion in limine. *Id.* at 87. She also testified that she had told Harris that she believed that the sentences on the gun charges would run concurrently with any sentences on the drug charges, if he was convicted of the latter, and was sure that she would also have explained the two-level increase for firearms under the Sentencing Guidelines. *Id.* at 88. On cross-examination by Harris's post-trial counsel, trial counsel admitted that the guns were mentioned in *voir dire*, which had undermined to some extent the purpose of the guilty plea to the firearms charges, and that the court had also orally

7

denied her motion in limine to exclude evidence of the guns, on the record, the morning before presentation of evidence began. *Id.* at 93 & 96.

There is no dispute that guns were mentioned by the magistrate judge conducting *voir dire* during jury selection, which had surprised trial counsel, because the magistrate judge had been informed that Harris intended to plead guilty to the firearms charges. The trial transcript also reflects that, before presentation of evidence began, Harris's trial counsel moved to exclude any evidence of guns, "[s]ince this is no longer a gun case." Trial Transcript (docket no. 80) at 2-3. The government resisted that motion on the grounds that guns are tools of the drug-trafficking trade and that the firearms evidence might be prejudicial, but not unduly so, in the circumstances of this case. *Id.* at 3-5. The court ruled as follows:

> Well, I'm going to allow the gun evidence. I find that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under [Rule of Evidence] 403; and, therefore, I'm going to allow it.

*Id.* at 7. There is no dispute that one of the guns involved in one of the gun charges was admitted as an exhibit during trial. On the other hand, as the government points out, there was no mention of Harris's prior felony conviction nor was any evidence of the illegal length of one of the firearms admitted during trial.

The court ultimately denied Harris's post-trial motions orally, on the record, on September 5, 2001, then confirmed the denial in a short written order on September 5, 2001 (docket no. 147). As to the ineffective assistance of counsel claim concerning the guilty pleas to the firearms charges, the court ruled as follows:

> With regard to the decision to plead guilty to the gun count, I find that that was clearly a strategic and tactical decision made by counsel. And whether or not she got the full benefit of her strategy is probably for somebody else to decide.

8

I mean, I think there are things that she could have done. For example, she could have filed a Rule 104 motion and got a ruling to determine whether or not the gun would be admissible even if she pled. And while she didn't do that, I don't think that falls below the standard of lawyers. It could have been done, but there's always something else that lawyers could do. And, in fact, in the seven years I've been a federal district court judge, I've never had a lawyer make such a Rule 104 motion, although I've often thought that they should. But I've never had it happen in either a civil case or a criminal case even though I frequently think that that would be the way to proceed.

So I find that it was just a strategy decision. It may or may not have gotten the benefit of what they had hoped for. But it was purely a strategy decision. And, therefore, there's no grounds to withdraw the guilty plea.

Transcript Of Oral arguments On Post-Trial Motions (docket no. 167) at 15-16.

### C. Sentencing

After denial of his post-trial motions, Harris was sentenced on December 19, 2001. The Judgment (docket no. 158) reflects that Harris was sentenced to a combined term of 292 months of incarceration on all five counts to which he had pleaded guilty or been found guilty, with a 120-month term on the felon-in-possession charge and a 240-month term on the short-barreled shotgun charge to run concurrently with other sentences.

### D. Appeal

Harris filed a notice of appeal of his conviction on December 27, 2001 (docket no. 162), reiterating his claim of ineffective assistance of counsel in advising him to plead guilty to the firearms charges among other alleged errors. The Eighth Circuit Court of Appeals, however, affirmed Harris's convictions and sentence. *United States v. Harris*,

9

310 F.3d 1105 (8th Cir. 2002). As to the ineffective assistance of counsel claim, the Eighth Circuit Court of Appeals reasoned as follows:

> An ineffective assistance of counsel claim should generally be raised in collateral post conviction proceedings under 28 U.S.C. § 2255 rather than on direct appeal. [*1112] *United States v. Whitefeather,* 275 F.3d 741, 743 (8th Cir. 2002). That is because "normally such a claim cannot be advanced without the development of facts outside the original record." *United States v. Dubray,* 727 F.2d 771, 772 (8th Cir. 1984) (quoting *United States v. Kazni,* 576 F.2d 238, 242 (9th Cir. 1978)). The evidentiary hearing in the district court developed some additional facts related to the pretrial proceedings, but these may need to be seen in the larger perspective of the entire case now that the direct appeal from Harris' convictions has been concluded. Harris also seeks to raise claims of ineffective assistance at trial. For these reasons, his ineffective assistance claims are premature at this stage and should be raised in a § 2255 motion.

*Harris*, 310 F.3d at 1111-12.

Although the Eighth Circuit Court of Appeals otherwise denied relief, it did note, in passing, that there was what the government acknowledged to be a "clerical error" in the sentence imposed for the short-barreled shotgun offense under 26 U.S.C. § 5871, because such an offense carries a statutory maximum sentence of 120 months, not 240 months as indicated in the judgment. *Id.* at 1109 & n.3. The court stated, "The parties should ask the district court to correct this clerical error and to communicate the correction to the Bureau of Prisons." *Id.* at 1109 n.3. The record does not reflect that the parties have ever asked the court to make the correction, as directed by the Eighth Circuit Court of Appeals, until Harris filed his April 30, 2007, motion seeking such a correction.

Although Harris filed a petition for a writ of certiorari to the Supreme Court, that petition was denied on May 19, 2003. *See United States v. Harris*, 538 U.S. 1052 (2003).

### E. The § 2255 Motion

On June 1, 2004, Harris filed the *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 173) now before the court. Harris stated the sole ground for relief to be a "Sixth Amendment violation due to ineffective assistance of counsel in the pre-trial stages when counsel failed to advise petitioner of the repercussions of pleading guilty to the firearms charges." Motion (docket no. 173) at 4. He explained the supporting facts, briefly, as follows:

> Counsel was ineffective when she advised Petitioner to plead guilty to the firearm charges by advising him that the [sic] by doing so, it would remove firearms from the jury trial for the drug charges. Counsel failed to secure a Federal Rules of Evidence, Rule 104 motion which would have assured counsel that the firearms would not be presented during the trial prior to advising Petitioner to provide his guilty plea. Had counsel filed the Rule 104 motion, prior to advising Petitioner to plead to the firearm charges, she would [have] properly advised Petitioner that the firearms where [sic] to be presented during the trial. Petitioner provides that [had] he known that counsel's advi[c]e was flawed, he would not have plead[ed] guilty and would have proceeded to trial.

Motion at 4. Harris makes numerous additional specific factual allegations, *see id.* at 5-7, but does not challenge counsel's conduct during trial. Harris also filed a Memorandum Of Law In Support Of Motion To Correct, Vacate, And/Or Set Aside Sentence Pursuant To Title 28 U.S.C. § 2255 (docket no. 173-2 & 173-3).

Unfortunately, there the matter languished for some time, owing to other matters on the court's crowded docket. However, eventually, by order dated April 24, 2007, (docket no. 176), the court directed the government to file a response to Harris's § 2255 motion on or before May 25, 2007, and directed Harris to file any reply on or before June 15, 2007. The government filed its Memorandum In Support Of Government Resistance

Case 1:99-cr-00002-LRR   Document 181   Filed 07/17/07   Page 11 of 30

To Defendant's Section 2255 Petition (docket no. 178) on May 21, 2007. Harris filed a *pro se* Reply (docket no. 180) on June 19, 2007.

## II.  LEGAL ANALYSIS

### A.  Preliminary Matters

Harris included in his brief in support of his § 2255 motion requests for discovery, appointment of counsel, and an evidentiary hearing.  The court will address these preliminary matters before turning to Harris's specific claim for § 2255 relief.

The Eighth Circuit Court of Appeals has noted that "discovery is available in habeas proceedings at the discretion of the District Court." *Barron v. Keohane*, 216 F.3d 692, 693 (8th Cir. 2000) (citing Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts).  In a § 2254 proceeding, the Supreme Court held that, under Rule 6(a), which is the same for both § 2255 and § 2255 proceedings, "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'" *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).  In this case, however, no further discovery is required, because the pertinent record was already well-developed on Harris's post-trial motions and Harris has not shown any reason to believe that, if the facts are more fully developed, he may be entitled to relief.  *Id.*  Therefore, Harris's request for discovery will be denied.

Next, Harris requests appointment of counsel to litigate his § 2255 claims.  The court may appoint counsel to a person seeking relief under 28 U.S.C. § 2255 "[w]henever . . . the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).  In this case, however, the court does not find that the interests of

justice require appointment of counsel. Again, the record pertinent to Harris's present claim of ineffective assistance of trial counsel was well-developed by new counsel on post-trial motions, and Harris has provided an articulate and coherent brief in support of his claim. Therefore, Harris's request for appointment of counsel will also be denied.

As the final preliminary matter, Harris seeks an evidentiary hearing on his § 2255 motion. As the Eighth Circuit Court of Appeals recently explained,

> A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255. We review the district court's decision not to hold an evidentiary hearing for an abuse of discretion. *Saunders v. United States,* 236 F.3d 950, 952 (8th Cir. 2001). "That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." *Id.* Therefore, in order to determine if [a movant under § 2255 ] is entitled to remand for an evidentiary hearing, we must consider the validity of his [claim for § 2255 relief]. *Id.*

*United States v. Ledezma-Rodriguez,* 423 F.3d 830, 835-36 (8th Cir. 2005). More specifically, "A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States,* 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States,* 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted). Moreover, "[i]n some cases, the clarity of the existing record on appeal makes an evidentiary hearing unnecessary, [but][a]bsent such clarity, an evidentiary hearing is

13

required." *Latorre v. United States,* 193 F.3d 1035, 1038 (8th Cir. 1999). At the evidentiary hearing, if one is required, the defendant must establish that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 623; *accord Latorre,* 193 F.3d at 1038 (quoting this standard from *Bousley*). In this case, the court concludes that no evidentiary hearing is required on any issue, because the record "conclusively show[s] that [Harris] is entitled to no relief" on his ineffective assistance claim, as the court will explain in more detail below. 28 U.S.C. § 2255; *Ledezma-Rodriguez,* 423 F.3d at 835-36. Moreover, the existing record, developed in the litigation of Harris's post-trial motion, with the assistance of new counsel, which included a probing evidentiary hearing, makes a further evidentiary hearing unnecessary. *Latorre*, 193 F.3d at 1038. This is so, even though the Eighth Circuit Court of Appeals declined to consider Harris's ineffective assistance claim on direct appeal on the ground that, notwithstanding the evidentiary hearing on his post-trial motions, the facts revealed in that hearing "may need to be seen in the larger perspective of the entire case now that the direct appeal from Harris' convictions has been concluded." *Harris*, 310 F.3d at 1112. Harris has not shown how the "larger perspective" now available requires a further evidentiary hearing.

Therefore, the court turns to the standards for relief on Harris's § 2255 motion.

## B. Standards For Relief Pursuant To § 2255

Section 2255 of Title 28 of the United States Code provides for post-conviction relief for federal prisoners, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or

14

> [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*)

On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted). The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise,

15

"[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

A defendant may not seek § 2255 relief at any time. Rather, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, Title I, § 105, 110 Stat. 1220, established a mandatory, one-year "period of limitation" for § 2255 motions, which runs from the latest of the following events:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

Case 1:99-cr-00002-LRR   Document 181   Filed 07/17/07   Page 16 of 30

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §§ 2255(1)-(4). Thus, a defendant seeking relief pursuant to § 2255 must establish the timeliness of his or her motion and that the issues raised in his or her motion are not procedurally defaulted, as well as that he or she is entitled to relief on the merits.

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of Harris's § 2255 motion. The court believes that it is likely, as the government contends, that Harris's § 2255 motion is untimely, because it was not filed within one year of the date that his judgment of conviction became final, and because other "triggers" for the running of the limitations period appear to be inapplicable. *See* 28 U.S.C. § 2255(1)-(4). Specifically, Harris's conviction became final upon denial of his petition for a writ of certiorari on May 19, 2003, but he did not file his § 2255 motion until more than a year later, on June 1, 2004.

17

Harris contends that his § 2255 motion is timely, because he actually placed it in the prison mail system on May 17, 2004. The court need not resolve the timeliness question, however, because the court finds that Harris's § 2255 motion plainly fails on the merits.

### C. Ineffective Assistance Of Counsel

Harris seeks § 2255 relief based on alleged ineffective assistance of his trial counsel in convincing him to plead guilty to firearms charges before his trial on drug-trafficking charges. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not Harris is ultimately entitled to relief on his § 2255 motion turns on whether or not he can satisfy the standards applicable to his "ineffective assistance" claim.

18

### 1. *Applicable standards*

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). However, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). Moreover, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"

19

*Id.* (quoting *Strickland*, 466 U.S. at 690). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must ordinarily show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). More specifically still, this court has explained that "'the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel,' and that 'to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Marcos-Quiroga*, 478 F. Supp. 2d 1114, 1130 (N.D. Iowa 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997).

20

## 2.    *Arguments of the parties*

Harris contends that his trial counsel assured him and his brother that, by pleading guilty to the firearms charges, he would remove the stigma of the firearms from jury consideration on the remaining drug charges, but that counsel performed deficiently in failing to secure a ruling excluding evidence of the firearms before pushing him to plead guilty to the firearms charges.  Specifically, he now contends that counsel should have filed a motion pursuant to Rule 104 of the Federal Rules of Evidence, as this court later noted in its oral ruling on his post-trial motions, and that counsel performed deficiently by failing to do so.  Although he acknowledges that counsel had a strategic reason for wanting him to plead guilty to the firearms charges, Harris contends that counsel's failure to research applicable case law and Rule 104 caused counsel to provide inadequate advice about the consequences of pleading guilty to those charges.  Because counsel's advice was bad, he contends that his guilty plea to the firearms charges was not knowing, intelligent, and voluntary.  He also contends that he did not want to plead guilty to the firearms charges and believed that he was innocent of those charges, so that he was prejudiced when he entered an unnecessary guilty plea from which he did not derive the expected benefit. He expressly asserts that he would not have pleaded guilty but for counsel's faulty advice.

The focus of the government's resistance is its contention that Harris cannot show prejudice.  The government argues that the firearms charges would have been easily proven, because there was more than adequate evidence to support them, and that Harris's guilty plea did not result in any longer sentence than would otherwise have been imposed on his drug convictions.  Indeed, the government contends that, even in the absence of a guilty plea or conviction on the firearms charges, Harris would have been subject to a sentencing enhancement under U.S.S.G. § 2D1.1 for possession of a firearm in connection with the drug offenses.  The government also points out that Harris was not prejudiced by,

21

and indeed, benefitted from, the guilty pleas, because the jury never heard evidence of his prior felony conviction, the absence of registrations for the firearms, or the fact that one firearm was of an illegal length. The government also argues that counsel's conduct was not deficient, because defense counsel made a realistic strategic choice, in light of the ease with which the firearms charges could be proved and the benefits of keeping Harris's felony conviction and other information about the firearms out of the trial on the drug charges.

### 3.    *Analysis*

#### a.    *Prejudice*

The government focuses on the second prong of the ineffective assistance analysis, proof of "prejudice" from counsel's unprofessional conduct. *See Ledezma-Rodriguez*, 423 F.3d at 836 (post-conviction relief on ineffective assistance of counsel requires proof of both deficient performance and prejudice); *accord Hill*, 474 U.S. at 58-59 (both prongs of the analysis apply when a defendant claims that ineffective assistance of counsel consisted of bad advice about entering into a guilty plea). Specifically, the government asserts that the firearms charges would have been easy to prove in this case and that, in any event, the sentences on the firearms offenses run concurrently with the longer sentences on the drug offenses, so that Harris was not prejudiced by his guilty pleas. This argument amounts to little more than a contention that the defendant is so guilty that it does not matter what irregularities may have occurred, which the court emphatically rejects. Moreover, the court is not convinced that the government has asserted the correct standard for "prejudice" in the context of Harris's claim that his counsel's bad advice caused him to plead guilty to the firearms offenses. In that context, the test is not a general one considering whether there is a reasonable probability that the outcome of the case would have been different, but a specific one considering whether there is "'a reasonable

22

probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Marcos-Quiroga*, 478 F. Supp. 2d at 1130 (quoting *Hill*, 474 U.S. at 58-59). Here, there is evidence that Harris did not want to plead guilty to the firearms charges and that he did so only because his counsel and his brother decided that he should do so—indeed, Harris testified at the hearing on post-trial motions that his brother decided that he should plead guilty to the firearms charges even though Harris still did not want to. The court need not make a definitive finding on this "prejudice" prong, however, because the court finds that trial counsel's conduct simply was not "deficient." *Walker*, 324 F.3d at 1040 (if the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).

### b. *Deficient performance*

The court finds that Harris cannot prove that his trial counsel's conduct in advising him to plead guilty to the firearms charges before trial was "deficient." *See Ledezma-Rodriguez*, 423 F.3d at 836 (post-conviction relief on ineffective assistance of counsel requires proof of both deficient performance and prejudice); *accord Hill*, 474 U.S. at 58-59 (both prongs of the analysis apply when a defendant claims that ineffective assistance of counsel consisted of bad advice about entering into a guilty plea). Harris's argument falls well short of a showing that his trial counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 687), or that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 522 (quoting *Strickland*, 466 U.S. at 688). Plainly, based on the record developed on post-trial motions, counsel made a "'[s]trategic choice[] . . . after thorough investigation of law and facts relevant to plausible options'" concerning whether or not Harris should plead guilty

23

to the firearms charges, and as such, her decision is "'virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Trial counsel assessed the evidence pertaining to the firearms charges and the impact of such evidence on the drug charges, and then made a reasonable choice that Harris would be better off, in the jurors' eyes, if he pleaded guilty to the firearms charges. As trial counsel's testimony in the post-trial motions hearing reveals, she reasonably believed that the firearms charges would be easy to prove in this case, and that it would benefit Harris to avoid the appearance that he was a violent drug dealer. Indeed, she had reasonably considered that, even if evidence of some sort of the guns came in, notwithstanding the pleas to the firearms offenses, at least the guns would not necessarily have to be introduced as exhibits, the jurors would not be considering whether or not there was possession of a gun, and the jurors would not have the guns "on their minds" or be "obsessed" with the guns.

Harris makes two contrary arguments, neither of which the court finds persuasive. First, he argues that the benefit of any plea to the firearms offenses was already lost, before his pleas, when the magistrate judge made reference to guns and drugs in the course of jury selection and that any remaining benefit was lost when some evidence of the guns still came in at trial. Generic references by the magistrate judge to the possibility that evidence of guns and drugs might come in simply were not enough to make counsel's continued advice to plead guilty to the firearms charges professionally deficient, where counsel reasonably believed that the pleas would limit the nature or amount of gun evidence that would actually come in, even if the pleas did not preclude all such evidence. Moreover, counsel's strategy did, in fact, limit the firearms-related evidence that came in by eliminating evidence of Harris's prior felony conviction and evidence concerning the lack of firearms registrations or the illegal length of the short-barreled shotgun. The

24

record also will not support a finding that counsel improperly guaranteed that all evidence of the guns would be precluded by guilty pleas to the firearms offenses.

Second, Harris tries to take counsel's conduct out of the realm of unchallengeable strategic decisions by asserting that counsel inadequately researched the evidentiary questions or the use of Rule 104 procedures to determine the admissibility of the firearms evidence, if he pleaded guilty to the firearms charges. *See Rice*, 449 F.3d at 897 ("'Strategic choices made *after thorough investigation of law and facts* relevant to plausible options are virtually unchallengeable.'") (emphasis added) (quoting *Strickland*, 466 U.S. at 690). This court opined in its oral ruling on post-trial motions that counsel could have used Rule 104 to test the admissibility of firearms evidence on the remaining drug charges if Harris were to plead guilty to the firearms charges, but the court concluded then—and reiterates the conclusion now—that counsel did not perform deficiently in failing to do so. It was not illogical or unprofessional for counsel to wait until after Harris had actually pleaded guilty to the firearms charges to move to exclude evidence pertaining to those charges, where counsel actually so moved prior to the introduction of any evidence in the case. Thus, counsel's failure to use Rule 104 procedures did not demonstrate a lack of investigation of the law or facts to remove her decision to advise Harris to plead guilty to the firearms charges from the realm of "virtually unchallengeable" strategic decisions. *See id.*

Because Harris cannot "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,'" he cannot satisfy the "deficient performance" prong of the *Strickland* analysis of "ineffective assistance" claims. *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 687). In the absence of a showing of deficient performance, the court need proceed no

Case 1:99-cr-00002-LRR   Document 181   Filed 07/17/07   Page 25 of 30

further in its analysis of Harris's "ineffective assistance" claim, *Walker*, 324 F.3d at 1040, and Harris's § 2255 motion fails.

### D.  Correction Of Clerical Error

The last matter to consider is Harris's April 30, 2007, *pro se* Motion To Resentence Defendant Pursuant To Eighth Circuit Court Of Appeals Order To Correct Statutory Maximum Sentence Imposed In Title 26 U.S.C. § 5871 (docket no. 177), as clarified on May 30, 2007 (docket no. 179).  Harris contends that the Eighth Circuit Court of Appeals ordered a correction of the sentence on one of the gun charges from 240 months to the statutory maximum sentence of 120 months, but that the correction has never been made. He requests that the court resentence him following the requirements of *United States v. Booker*, 543 U.S. 220 (2005).  The government contends that this motion has not been reviewed by the court pursuant to Rule 4 of the Section 2255 Rules, but that as a § 2255 motion, it is successive and untimely.

As this court observed above, although the Eighth Circuit Court of Appeals otherwise denied relief on Harris's direct appeal, it did note, in passing, that there was what the government acknowledged to be a "clerical error" in the sentence imposed for the short-barreled shotgun offense under 26 U.S.C. § 5871, because such an offense carries a statutory maximum sentence of 120 months, not 240 months as the judgment indicated.  *Harris*, 310 F.3d at 1109 & n.3.  The court stated, "The parties should ask the district court to correct this clerical error and to communicate the correction to the Bureau of Prisons."  *Id.*  The record does not reflect that the parties have ever asked the court to make the correction, as suggested by the Eighth Circuit Court of Appeals, until Harris filed his April 30, 2007, motion.

26

The court is shocked that neither party ever moved to correct what was obviously a "clerical error," and equally embarrassed that the court did not itself correct the error without waiting for a motion from the parties in light of the direction of the Eighth Circuit Court of Appeals. As between the parties, the government cannot lay the burden entirely on Harris's appellate counsel, because the government acknowledged that the error was a "clerical" one, and the Eighth Circuit Court of Appeals directed *both* parties to seek a correction. For the government now to assert that Harris's attempt to correct, *pro se*, what the court and counsel for both sides overlooked on the ground that his attempt is an untimely or successive § 2255 motion is unconscionable. Although prosecutors are to be zealous advocates, prosecutors are also held to a higher standard since their paramount duty in every case is to seek justice, win or lose. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). Failing to move to correct the clerical error in Harris's sentence under § 5871 and opposing Harris's motion for such a correction fails to meet that standard. Moreover, Harris's motion is *not* in the nature of a § 2255 motion, but is plainly a motion to correct an error already noted by the Eighth Circuit Court of Appeals on that court's direction. Thus, the government's contention that Harris's motion is a successive or untimely § 2255 motion is frivolous.

On the other hand, contrary to Harris's contentions, the appellate court's direction does not require Harris to be "resentenced," and certainly does not invoke all of the sentencing scheme subsequently established in *Booker*. The Eighth Circuit Court of Appeals has already determined the appropriate remedy: an order correcting the clerical error and communication of the correction to the Bureau of Prisons. *See Harris*, 310 F.3d

Case 1:99-cr-00002-LRR   Document 181   Filed 07/17/07   Page 27 of 30

at 1109 n.3. Therefore, the court will grant Harris's second motion to the extent of entering an order directing amendment of the sentencing judgment *nunc pro tunc* to correct the clerical error in Harris's sentence under § 5871 on the short-barreled shotgun offense from 240 months to the statutory maximum of 120 months and will convey that order to the Bureau of Prisons for correction of Harris's sentence in their records.

## E. Certificate Of Appealability

Denial of Harris's § 2255 Motion raises the question of whether or not he should be issued a certificate of appealability for all or any of his claims therein. Whether or not a certificate of appealability should issue is controlled by 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
> * * *
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2253(c)(1)(B); *accord* FED. R. APP. P. 22(b). To obtain a certificate of appealability on claims for § 2255 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that

28

"'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In light of the evidence that trial counsel's performance was not deficient, the court finds that Harris has not made a substantial showing of the denial of a constitutional right on his § 2255 claim, 28 U.S.C. § 2253(c)(2), because there is no showing that reasonable jurists would find this court's assessment of Harris's claim debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, that any court would resolve those issues differently, or that the issue Harris raises deserves further proceedings. *Cox*, 133 F.3d at 569. Therefore, Harris does not make the requisite showing to satisfy § 2253(c) on his claim for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Similarly, to the extent that any appeal of Harris's motion for correction of the error in his sentence under § 5871 on one of the firearm offenses could be construed to be subject to the requirements of § 2253, the court, likewise, finds no basis for granting a certificate of appealability on the court's disposition of that motion, because Harris has now obtained the relief dictated by the Eighth Circuit Court of Appeals.

## III.  CONCLUSION

Upon the foregoing,

1.    Defendant Jermaine Harris's June 1, 2004, *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 173) is **denied in its entirety**.

29

2.     Defendant Jermaine Harris's April 30, 2007, *pro se* Motion To Resentence Defendant Pursuant To Eighth Circuit Court Of Appeals Order To Correct Statutory Maximum Sentence Imposed In Title 26 U.S.C. § 5871 (docket no. 177), as clarified on May 30, 2007 (docket no. 179), is **granted** to the extent that the court will enter a separate order directing amendment of the sentencing judgment *nunc pro tunc* to correct the clerical error in Harris's sentence under § 5871 on the short-barreled shotgun offense from 240 months to the statutory maximum of 120 months and will convey that order to the Bureau of Prisons for correction of Harris's sentence in their records, but the motion is otherwise **denied.**

3.     This matter is **dismissed in its entirety**.

4.     No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED.**

**DATED** this 17th day of July, 2007.

*Mark W. Bennett*
_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA